PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JASON E.T. CATO,

               Plaintiff,

      v.

ZWELLER,    Ontario    County    Sheriff's
Deputy,

               Defendant.

_____

**ORDER**

6:21-CV-6207 EAW

*Pro se* Plaintiff Jason E.T. Cato ("Plaintiff"), a prisoner confined at the Cayuga

Correctional Facility,[1] filed a complaint seeking relief under 42 U.S.C. § 1983.  (Dkt. 1).

The complaint named as Defendants various members of the Ontario County Sheriff's

Department and alleged that during a previous confinement at the Ontario County Jail

("the Jail"), Defendants violated Plaintiff's constitutional and federal statutory rights.  (*Id.*

at 2-12).  Plaintiff also moved to proceed *in forma pauperis* ("IFP").  (Dkt. 5; Dkt. 9).

      The Court granted Plaintiff's motion to proceed IFP and screened the complaint

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  (Dkt. 12 ("Screening Order")).  The

Court permitted the First Amendment free-exercise claim against Deputy Sheriff Zweller

to proceed to service, but dismissed without leave to amend the claims under the

_____

[1]     According to publicly-available information, Plaintiff is confined at the Cayuga
Correctional Facility, located at 2202 NY-38A, Moravia, New York 13118.  *See
Incarcerated Lookup*, NYS Department of Corrections and Community Supervision,
https://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 14, 2023).  Plaintiff has failed to
update his address in accordance with Local R. Civ. P. 5.2(d).  Plaintiff is cautioned that
the failure to do so in the future may result in dismissal of this action with prejudice.
Nonetheless, the Court *sua sponte* directs the Clerk of Court to update Plaintiff's address.

Religious Freedom Restoration Act ("RFRA") and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA").  (*Id.* at 8-9).  The Court allowed Plaintiff to file an amended complaint to replead the Fourteenth Amendment equal protection claims based on allegations of racial discrimination by Deputy Sheriffs Thorpe, Pancoast, Cummings, Lazada, and Storie (*see id.* at 10-11); and the First Amendment retaliation claim against Deputy Sheriff Cummings (*see id.* at 12-13).  The Court also found that the complaint lacked any allegations that Lieutenant Dietschler and Deputy Sheriffs Shannon, Gerstner, and Waite were personally involved in the alleged constitutional violations but permitted Plaintiff to file an amended complaint attempting to cure this deficiency.  (*Id.* at 13-15).  Finally, the Court stated that to the extent Plaintiff sought to challenge his conditions of confinement, he had not stated a plausible claim but would be permitted to amend.  (*Id.* at 13 n.3).

The Court directed Plaintiff to file his amended complaint no later than 45 days after the date of the Screening Order; that is, on or before February 10, 2023.  (*Id.* at 16).  The Court informed Plaintiff that if he failed to file an amended complaint within the 45-day period, all of the Defendants except Zweller would be terminated with prejudice.  (*Id.*)  Plaintiff did not file an amended complaint or move to extend the deadline on or before February 10, 2023.

After the United States Marshals Service unsuccessfully attempted service upon Defendant Zweller, the Ontario County Attorney's Office ("OCA") informed the Court via letter dated March 1, 2023, that no individual named Zweller had been employed as an Ontario County Deputy Sheriff during the relevant time period.  (Dkt. 13 at 2).  Therefore, the OCA stated it was unable to accept service on Zweller's behalf.  (*Id.*).

Accordingly, on March 3, 2023, the Court issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997), directing Plaintiff to provide any identifying information he possessed regarding Zweller.  (Dkt. 14).  In addition, the Court noted that because Plaintiff did not timely file an amended complaint or move to extend the deadline for doing so, the Clerk of Court had terminated all of the Defendants except Zweller, as per the Court's instructions in the Screening Order.  (*Id.* at 2).

On March 8, 2023, the Court received Plaintiff's motion for an extension of time to file an amended complaint pursuant to Federal Rule of Civil Procedure 6.  (Dkt. 15).  On April 25, 2023, the Court granted the motion in part and denied it in part.  (Dkt. 19).  More specifically, the Court permitted Plaintiff to file an amended complaint but precluded him from repleading the claims that previously had been dismissed with prejudice due to his failure to file a timely amended complaint; namely, the First Amendment retaliation claim against Cummings and the Fourteenth Amendment equal protection claims against Thorpe, Cummings, Pancoast, Lazada, and Storie.  (*Id.* at 6).  The Court reminded Plaintiff that he could not include his RFRA/RLUIPA claims in his amended complaint, as those claims had been dismissed without leave to replead on initial screening.  (*Id.* (citing Dkt. 12 at 15)).  In addition, the Court ordered the reinstatement of Dietschler, Shannon, Gerstner, and Waite as Defendants.  (*Id.* at 7).  Plaintiff was advised that his amended complaint was due within 45 days of the date of that order, that is, on June 9, 2023.  (*Id.*).

Plaintiff never responded to the Court's order directing him to provide identifying information as to Zweller.  (*See id.* at 2).  However, he timely filed an amended complaint that was received by the Court on June 5, 2023. (Dkt. 20).  Plaintiff has named the following Defendants: Ontario County, Lieutenant Dietschler, Lieutenant Morrell, and

Deputy Sheriffs Weller, Thorpe, Pancoast, and Lazada.  (*Id.* at 1; *see also id.* at ¶¶ 9-14).
Based on the allegations in the amended complaint, "Weller" appears to be the same
Defendant previously identified as "Zweller."  (*Id.* at ¶¶ 24-33).

The Court has screened the amended complaint pursuant to 28 U.S.C.
§§ 1915(e)(2)(B) and 1915A.  For the reasons discussed below, the amended complaint
does not remedy any of the pleading deficiencies identified in the Screening Order.
Therefore, the amended complaint is dismissed with prejudice pursuant to 28 U.S.C.
§§ 1915(e)(2)(B) and 1915A(b) as to all defendants except as to Zweller, now identified
as Weller, and except as to defendants Ontario County and Lieutenant Morrell who are
named for the first time in the amended complaint, and as to the First Amendment and
equal protection claims against Lieutenant Dietschler which were potentially asserted for
the first time in the amended complaint.  However, for the reasons discussed herein, the
Court does not grant leave to amend the claims asserted against Ontario County and
Lieutenant Morrell nor does it grant leave to amend to assert a First Amendment or equal
protection claim against Lieutenant Dietschler.  The Court will order service of the
amended complaint on Defendant Weller, who will be directed to answer the allegations
against him concerning the First Amendment free-exercise claim.  In addition, the Court
denies without prejudice the motion to compel filed by Plaintiff (Dkt. 24) as it is premature
before any defendant has appeared in this action.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and
dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)
(citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a

complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.     THE COMPLAINT

In evaluating the complaint, the Court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").  Although the Court "is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet

the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).   "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under 42 U.S.C. § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).   The theory of *respondeat superior* is not available in an action under 42 U.S.C. § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).   Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

## III.   PLAINTIFF'S ALLEGATIONS

The allegations set forth in the amended complaint are presumed true at this stage of the proceedings.  Plaintiff has reiterated the allegations in support of the free-exercise

claim under the First Amendment against Defendant Zweller, now identified as Weller. (Dkt. 20 at 8-12).  Because the Court has allowed this claim to proceed to service, it is unnecessary to recite those allegations here.  The remaining allegations in the amended complaint are summarized below.

In early July 2020, Deputy Sheriff Thorpe said to Plaintiff, "[Y]ou know what makes you lucky? . . . . [Y]ou can kiss my ass and I can't."  (*Id.* at 12).  On July 2, 2020, Thorpe "falsely accus[ed]" Plaintiff and other unspecified individuals of having towels wedged at the bottom of their cell doors.  (*Id.* at 13).  Plaintiff told Thorpe that his accusations about the towels amounted to "racial profiling."  (*Id.*).

On August 17, 2020, Thorpe told Plaintiff that a woman named Tabetha O'dell had called the Jail and complained about Plaintiff writing to her; Thorpe told Plaintiff to stop sending her letters.  (*Id.* at 14).  Plaintiff told Thorpe that he did not know anyone by the name of Tabetha O'dell.  (*Id.*).  Thorpe then read from a letter Plaintiff had written to someone named Justina Hernandez.  (*Id.*).  Thorpe did so in a "real loud" voice in front of other inmates.  (*Id.*).

On September 13, 2020, during an "in camera cup exchange in Pod 8," Deputy Sheriff Pancoast used a "racial slur," telling Plaintiff, "'<u>Go on Get</u>,' as if slavery was never abolished."  (*Id.* at 17 (underlining in original); *see also id.* at 18).  Plaintiff states that this "racial slur was damaging, painful, egregious, and intentionally referr[ed] to the [p]laintiff as if he is a '<u>N[*****]</u>' or '<u>Slave</u>.'"  (*Id.*) (misspellings corrected; underlining in original).

On November 11, 2020, Deputy Sheriff Lazada and Lieutenant Dietschler came to Plaintiff's cell.  (*Id.* at 19).  Lazada asked Plaintiff for the "Gilbert's law book" because a "Latin" inmate named Marco needed it.  (*Id.*).  Plaintiff responded, "yeah or yes and <u>please</u>

bring the book back when he is done with it."  (*Id.* (underlining in original)).  Lazada became "irate and started falsely claiming" that Plaintiff "should not have the book" and that he (Lazada) was going to give the book to the sergeant at 2:22 p.m. after the other inmate was finished with it.  (*Id.* at 19-20).

On January 28, 2021, Dietschler deprived Plaintiff of his state and federal constitutional "rights to law library supplies," by taking his typing paper, pens, envelopes, and carbon paper.  (*Id.* at 20-21).

## IV.   ANALYSIS

### A. Equal Protection Claims

As the Court previously explained, to state a colorable claim under the Fourteenth Amendment's equal protection clause, a plaintiff must allege that:

> (1) . . . compared with others similarly situated, [plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

(Dk. 12 at 10 (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992) (citing *Wayte v. United States*, 470 U.S. 598, 608-09 (1985) (ellipsis and alteration in original)))). "[V]erbal harassment or profanity alone, 'unaccompanied by any injury[,] no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."  *Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (collecting cases).

### 1.   Previously Dismissed Defendants (Thorpe, Pancoast, and Lazada)

The Court previously explained that in order for Plaintiff to reassert any claims against the defendants who had been dismissed with prejudice, he "must show 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  (Dkt. 19 at 3 (quoting *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007), *aff'd sub nom. Pub. Emps. Ret. Ass'n of New Mexico v. PricewaterhouseCoopers LLP*, 305 F. App'x 742 (2d Cir. 2009) (quotation omitted in original))).  Finding that Plaintiff had not attempted to make the necessary showing, the Court precluded Plaintiff from reasserting the equal protection claims against Thorpe, Pancoast, and Lazada in his amended complaint.  (*Id.* at 6).

Notwithstanding this limitation, Plaintiff has repleaded the equal protection claims against Thorpe, Pancoast, and Lazada in the amended complaint.  (Dkt. 20 at 10-14). The Court is mindful of its objective to construe Plaintiff's *pro se* submissions "liberally . . . to raise the strongest arguments they suggest," *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003) (per curiam).  Accordingly, the Court has considered whether Plaintiff's new allegations demonstrate that rejoinder of these defendants is warranted under the applicable standard, *see In re Bisys Sec. Litig.*, 496 F. Supp. 2d at 386.

### a.    Thorpe

Plaintiff has repeated the allegations from the original complaint that Thorpe made a comment about "kiss[ing] [Thorpe's] ass" and accused Plaintiff and other unspecified individuals of wedging towels in their cell doors.  (*Compare* Dkt. 1 at 4-5, *with* Dkt. 20 at 12-13).  The Court previously found that these allegations did not plausibly allege an equal protection claim.  (Dkt. 12 at 11).  The amended complaint includes a new allegation against Thorpe—that he falsely accused Plaintiff of harassing a woman by writing her letters.  (*See* Dkt. 20 at 14).  When Plaintiff denied it, Thorpe read portions of Plaintiff's letter to a different woman in a loud voice so other detainees could hear.  (*Id.*).  Like the

allegations in the original complaint, the new allegations about the letter do not explicitly or implicitly refer to Plaintiff's racial identity.  There are no facts from which the Court plausibly can infer racially discriminatory intent or purpose, proof of which is required to prevail on an equal protection claim.  *Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir. 1999).  Even if Thorpe had explicitly referred to Plaintiff's race, that still would be insufficient to state a plausible equal protection claim.  *See*, *e.g.*, *Josie v. City of New York*, No. 21CV2486ARRRER, 2023 WL 3765063, at *10 (E.D.N.Y. June 1, 2023) (finding that the plaintiff failed to state claim of intentional racial discrimination in violation of the equal protection clause where the complaint alleged that "[d]efendant officers routinely harass[ed] the plaintiff and his friends and family, and have refused to conduct any investigations concerning the plaintiff's complaints simply because he is a member of a racial/ethnic minority group" (second alteration added)).  In sum, the allegations in the amended complaint do not plausibly allege an equal protection claim against Thorpe.

Because Plaintiff has not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice," *In re Bisys Sec. Litig.*, 496 F. Supp. 2d at 386, there is no basis for reinstating Thorpe as a defendant.  Thorpe therefore remains dismissed with prejudice from this action.

### b. Pancoast

Plaintiff has repeated the sole allegation against Pancoast from the original complaint—that Pancoast told Plaintiff to "Go on, get."  (*Compare* Dkt. 1 at 8, *with* Dkt. 20 at 14).  Plaintiff now asserts that this phrase, when used by a "Caucasion [sic] male" toward a "Black or Black Foot Indian," is "racial in nature."  (Dkt. 20 at 14).  Plaintiff states

that it was equivalent to referring to him as a "N[*****]" or "Slave." (*Id.*).  Plaintiff does not allege that Pancoast actually used the terms "N[*****]" and "Slave."  Even assuming that Pancoast had done so, under the circumstances the amended complaint still does not plausibly allege an equal protection claim.  *See*, *e.g.*, *Stone v. Eamer*, No. 7:15-CV-97 (LEK/ATB), 2018 WL 557872, at *7 (N.D.N.Y. Jan. 19, 2018) (finding no equal protection violation where prison officer commented to the plaintiffs, "Just like your kind.  Daddy tell you one thing, and you got to go run to mommy"; "You n[******]"; and "I believe I could have your black ass sent to Canada").

Plaintiff has not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice," *In re Bisys Sec. Litig.*, 496 F. Supp. 2d at 386, so as to warrant reinstating Pancoast as a defendant.  Accordingly, Pancoast remains dismissed with prejudice from this action.

### c.      Lazada

In the original complaint, Plaintiff alleged that Lazada "used racial slurs or racial acts." (Dkt. 1 at 11).  However, he did not provide any details about Lazada's allegedly offensive conduct.  In the amended complaint, Plaintiff asserts that Lazada came to his cell and asked Plaintiff for a law book, explaining that another detainee needed to use it. (Dkt. 20 at 19).  When Plaintiff asked Lazada to return the book after the other detainee was done with it, Lazada became angry, told Plaintiff he should not have the book, and threatened not to return it to him. (*Id.* at 19-20).  According to Plaintiff, Lazada engaged in "racial discrimination" because Plaintiff is Black while the other inmate in this scenario is Latin. (*Id.* at 20).

The facts pleaded in the amended complaint do not explicitly state that the exchange with Lazada had anything to do with Plaintiff's racial identity.  Nor is there any reasonable basis to infer that Lazada was motivated by discriminatory animus.  In any event, it is well established that "[m]ere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." *Baskerville v. Goord*, No. 97 CIV. 6413 (BSJ), 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000).  As Plaintiff has not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice," *In re Bisys Sec. Litig.*, 496 F. Supp. 2d at 386, there is no legitimate basis to reinstate Lazada as a defendant.  Therefore, Lazada remains dismissed with prejudice from this action.

### 2.    Dietschler

In the amended complaint, Plaintiff alleges that Dietschler "accompanied" Lazada to Plaintiff's cell on the occasion that Lazada asked for the law book from Plaintiff.  (Dkt. 20 at 19).  Plaintiff does not allege that Dietschler said or did anything during this incident. Even assuming that Dietschler, as a lieutenant, was in a supervisory position over Lazada, his mere "linkage in the prison chain of command," *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985), is insufficient to establish his personal involvement in the alleged constitutional violation.   Further, it is clear that Plaintiff cannot hold a supervisory defendant such as Dietschler liable under § 1983 simply by alleging that he inadequately trained and supervised his subordinates.  *See Powell v. City of Jamestown*, No. 1:21-CV-721, 2022 WL 1913581, at *14 (W.D.N.Y. June 3, 2022) (allegation that supervisory defendants "faile[d] to adequately train and supervise [their] employees relating to the use

of force including but not limited to failing to treat medical conditions and preventing self harm" was "conclusory" and "insufficient" to allege personal involvement (alterations in original) (citing *Guzman v. McCarthy*, No. 9:21-CV-1192 (MAD/ATB), 2022 WL 630873, at *3 (N.D.N.Y. Mar. 4, 2022) (mere allegation that prison superintendent failed to train his officers to protect inmates from harm was "not enough to plausibly allege the [superintendent's] personal involvement"))).  Instead, Plaintiff must establish the elements of the underlying constitutional violation against Dietschler directly.  *Tangreti*, 983 F.3d at 618.  As discussed above, the allegations against Lazada concerning the law book do not state a plausible equal protection claim.  It follows that the amended complaint fails to state an equal protection claim against Dietschler based on his mere presence during the incident involving the law book.

Plaintiff also alleges that Dietschler, on one occasion, took his typing paper, pens, and envelopes.  (Dkt. 20 at 20-21).  There are no facts pleaded from which the Court can infer that Dietschler singled out Plaintiff for selective treatment based on intentional or purposeful discrimination.  Thus, the allegation regarding the library supplies also fails to state a plausible equal protection claim against Dietschler.  Since the amended complaint does not suggest that there are any additional facts that could support a plausible equal protection claim against Dietschler if Plaintiff was given another opportunity to amend, the Court declines to grant leave to amend.

In keeping with its obligation to liberally construe Plaintiff's amended complaint, the Court has evaluated whether the allegation regarding Dietschler and the library supplies states a plausible First Amendment claim for denial of access to the courts.  *See Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) ("The constitutional right of

access to the courts gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them." (citing *Bounds v. Smith*, 430 U.S. 817, 824-28 (1977)).  "In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff."  *Id.* (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim."  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Plaintiff has not alleged any facts suggesting that Dietschler's conduct on January 28, 2021, was deliberate and malicious, or that it frustrated Plaintiff's ability to litigate a nonfrivolous claim.  Indeed, Plaintiff plausibly cannot allege actual injury given that he timely commenced this § 1983 action about a month later, on February 27, 2021.  (Dkt. 1 at 12).  Therefore, even liberally construed, the amended complaint fails to state a derivative First Amendment claim based on a one-day denial of access to library supplies. *See*, *e.g.*, *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The dismissal of the . . . claim [regarding the denial of pens] was proper because the complaint did not allege any injury stemming from the denial of pens on one occasion.  In view of the apparent fact that Purcell has not suffered harm from the denial, even liberal pleading rules do not suggest that such an allegation was implicit in the complaint.").  The amended complaint does not suggest that there are any additional facts that could support a plausible First

Amendment claim against Dietschler if Plaintiff was given another opportunity to amend. Thus, the Court declines to grant leave to amend.

However, since the claims against Dietschler under the First Amendment and any equal protection claim are specifically addressed for the first time in this Decision and Order, any such claims are dismissed without prejudice.  Plaintiff may attempt to pursue leave to assert such claims, if appropriate, through formal motion practice.

### B.    Eighth Amendment Claims

In the Screening Order, the Court noted that Plaintiff had listed a violation of his rights under the Eighth Amendment to be free from cruel and unusual punishment, but it was unclear whether he in fact was asserting a claim challenging the conditions of his confinement.  (*See* Dkt. 12 at 13 n.3).  The Court granted leave to amend to attempt to allege such a claim.  (*Id.*).

As an initial matter, because Plaintiff was a pretrial detainee and not a sentenced prisoner at the time he filed the complaint, his remedy for unconstitutional conditions of confinement lies in the Fourteenth Amendment's due process clause, not the Eighth Amendment's proscription against cruel and unusual punishments.  *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  To the extent the amended complaint attempts to assert an Eighth Amendment claim, it is dismissed as not cognizable because Plaintiff was not a sentenced prisoner at the time of the alleged incident.

Under either the Eighth or Fourteenth Amendments, a plaintiff first must establish that he suffered a sufficiently serious constitutional deprivation, *Darnell*, 849 F.3d at 29; and then must demonstrate that the defendant acted with deliberate indifference to a substantial risk of harm, *id.* at 32.  However, unlike a convicted prisoner, a pretrial

detainee need not show that the defendant had a "subjective awareness" that his or her "acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.* at 35.   Instead, deliberate indifference is defined objectively.   *Id.*   As district courts have observed, the standard applicable to convicted prisoners "is more demanding than the objective standard used to evaluate the second prong of a pretrial detainee's deliberate-indifference claim."   *Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *14 n.17 (S.D.N.Y. Feb. 25, 2021) (collecting cases).

The amended complaint, like the original complaint, is peppered with conclusory assertions that Defendants subjected him to "cruel and unusual punishment" while he was confined at the Jail.  (*See* Dkt. 20 at 1, 5, 6, 18, 21, 22, 25; *see also id.* at 14, 24 (referring to Eighth Amendment)).   Plaintiff provides no specifics about the acts and omissions that purportedly amounted to "cruel and unusual punishment."   Instead, the most reasonable reading of the amended complaint is that the alleged "cruel and unusual punishment" is simply the same unconstitutional conduct Plaintiff complains about elsewhere; that is, the alleged interference with the free exercise of religion, racial harassment, and deprivation of writing supplies.

Plaintiff has pleaded no factual content from which the Court may infer that any of the Defendants acted with deliberate indifference and subjected him to a substantial risk of serious harm to his health or safety.   Therefore, he has failed to allege a plausible conditions-of-confinement claim, even under the Fourteenth Amendment's more favorable standard.   Accordingly, any such claim is dismissed for failure to state a claim. *See Andrew v. Bellevue Hosp.*, No. 13-CV-8531 (KBF), 2016 WL 7009018, at *5 (S.D.N.Y. Nov. 30, 2016) ("While plaintiff's [second amended complaint] repeatedly

alleges 'd[e]liberate indifference' by defendants, his factual allegations do not support this legal conclusion even under the most liberal construction." (second alteration in original) (citing *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")).  The amended complaint does not suggest that there are any additional facts that could support a plausible conditions-of-confinement claim if Plaintiff was given another opportunity to amend.  Thus, amendment would be futile and leave to amend is denied.

### C.   Lack of Personal Involvement

#### 1.   Reinstated Defendants (Shannon, Gerstner, and Waite)

In its prior order (Dkt. 19), the Court reinstated Shannon, Gerstner, and Waite to allow Plaintiff to attempt to allege their personal involvement.  Plaintiff has not included any of these defendants in the amended complaint's caption.  Further, the body of the amended complaint is devoid of allegations referencing any unconstitutional acts or omissions by Shannon, Gerstner, and Waite.  Because Plaintiff has failed to include factual allegations tending to show the personal involvement of Shannon, Gerstner, and Waite in any constitutional violations, he has not stated cognizable § 1983 claims against them.  Shannon, Gerstner, and Waite therefore are dismissed as defendants.  *See*, *e.g.*, *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir. 1987) (finding that complaint "fails to state a claim for relief with respect to Martin" where "[i]t does not allege any personal involvement by Martin in the decisions to reveal Barbera's identity and deny her protection").  The amended complaint does not suggest that there are additional facts that could support plausible claims against these individuals if Plaintiff were given another opportunity to

amend.  The Court therefore concludes that amendment would be futile and dismisses Shannon, Gerstner, and Waite with prejudice from this action.

### 2.    New Defendants

#### a.    Lieutenant Morrell

For the first time, Plaintiff has included an individual named Lieutenant Morrell as a Defendant in the caption of the amended complaint, but there are no allegations regarding any unconstitutional acts or omissions by him in the body of the amended complaint.  In the absence of any factual allegations that Morrell was personally involved in conduct that violated Plaintiff's constitutional rights, the amended complaint fails to state a cognizable claim under § 1983 against him.  Therefore, Morrell is dismissed as a Defendant from this action.  *See*, *e.g., Cipriani v. Buffardi*, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."); *see generally Barbera,* 836 F.2d at 99.

The Court declines to grant leave to amend for two reasons.  First, the addition of new claims against a new defendant falls outside the scope of the amendment permitted in the Court's previous orders.  (Dkt. 12, Dkt. 19).  *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (noting that courts in this Circuit "routinely dismiss[] claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted"); *Masri v. Cruz*, No. 17cv8356 (AT) (KHP), 2019 WL 2388222, at *2 (S.D.N.Y. June 6, 2019) (refusing to consider certain claims raised by

plaintiff in amended complaint that exceeded scope of leave to amend).  Second, the amended complaint does not suggest that there are any additional facts that could support plausible claims against Morrell if Plaintiff was given another opportunity to amend.  However, because Plaintiff has not previously been advised of the deficiencies with respect to any claims against Lieutenant Morrell, the dismissal is without prejudice. Plaintiff may attempt to pursue a motion for leave to amend, if appropriate, through formal motion practice.

### b.    Ontario County

Plaintiff has named Ontario County as a new defendant in the caption and the body of the amended complaint.  (Dkt. 20 at 1; *see also id.* at ¶ 9).  However, Plaintiff has not alleged a plausible claim of municipal liability against Ontario County.  Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), a plaintiff must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."  *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)).  "In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal 'policy or custom' from which the alleged injury arose."  *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 609 (W.D.N.Y. 2015) (quoting *Monell*, 436 U.S. at 694).

"*Monell* does not provide a separate cause of action" against a municipality; rather, "it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional

violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, a *Monell* claim cannot exist without an underlying constitutional violation attributable to a municipal policy or custom. *See id.* ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

The only allegations on which Plaintiff conceivably could assert *Monell* liability against Ontario County are those that the Court has allowed to proceed to service, i.e., the First Amendment free-exercise claim against Zweller, now identified as Weller. However, Plaintiff has not alleged any facts supporting the inference that this Defendant, in denying Plaintiff the ability to attend Easter services in 2019 (*see* Dkt. 20 at 9), acted pursuant to an official policy or custom promulgated or recognized by Ontario County. Rather, Plaintiff simply seeks to hold Ontario County liable for its actions in "employ[ing], supervis[ing], and "controll[ing] the individual [o]fficial [d]efendants" (*id.* at ¶ 10), who committed the purported constitutional violations. That is, Plaintiff relies solely on a theory of *respondeat superior*, which is not available against a municipality such as Ontario County. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). The amended complaint thus fails to state a *Monell* claim against Ontario County and does not survive initial screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Moreover, as noted above in connection with Defendant Morrell, the addition of new claims against a new defendant falls outside the scope of the amendment permitted

in the Court's previous orders.  *See Palm Beach Strategic Income, LP*, 457 F. App'x at 43.  Dismissal of Ontario County as a Defendant is appropriate for this reason alone.  *See id.*

Because the amended complaint does not suggest that there are any additional facts that could support a plausible *Monell* claim if Plaintiff were given another opportunity to amend, the Court denies amendment as futile.  However, since this is the first time that Plaintiff has attempted to assert a claim against Ontario County, the dismissal is without prejudice.  Plaintiff is free to attempt to pursue a motion to amend, if appropriate, through formal motion practice.

## CONCLUSION

To the extent the amended complaint seeks to rejoin Thorpe, Pancoast, and Lazada as parties, Plaintiff has failed to make the required showing, and the request to reinstate the Fourteenth Amendment racial discrimination/equal protection claims against them is denied with prejudice.  Thorpe, Pancoast, and Lazada remain dismissed with prejudice as defendants to this action.

To the extent the amended complaint asserts claims against Dietschler based on (1) racially discriminatory treatment in violation of the Fourteenth Amendment's equal protection clause, and (2) the denial of access to the courts in violation of the First Amendment, the allegations fail to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The claims are dismissed without prejudice.

To the extent the amended complaint attempts to assert conditions-of-confinement claims under the Eighth or Fourteenth Amendments, such allegations fail to state a claim

under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Because amendment would be futile, these claims are dismissed with prejudice.

Plaintiff has failed to allege the personal involvement of Shannon, Gerstner, and Morell in any constitutional violations.  Because amendment would be futile, Shannon, Gerstner, and Waite are dismissed with prejudice as defendants from this action.

The amended complaint fails to state a *Monell* claim against Ontario County and fails to state any claim against Lieutenant Morrell.  Both defendants are dismissed without prejudice from this action.

The only surviving claim in the amended complaint is the First Amendment free-exercise claim against Zweller, now referred to as Weller.  (*See* Dkt. 20 at ¶¶ 24-33).  The Clerk of Court will be directed to update the caption to change the spelling of Zweller to Weller.  The United States Marshals Service shall effectuate service of the amended complaint on Weller, and he shall answer the allegations against him.

## ORDER

IT HEREBY IS ORDERED that the amended complaint is dismissed with prejudice without leave to replead as to Shannon, Waite, and Gerstner; and it is further

ORDERED that the amended complaint is dismissed without prejudice as to Dietschler, Ontario County, and Lieutenant Morrell; and it is further

ORDERED that Thorpe, Lazada, and Pancoast remain dismissed with prejudice as defendants to this action; and it is further

ORDERED that the Clerk of Court shall update the caption to change the spelling of Zweller to Weller; and it is further

ORDERED that, as the Court previously determined, the First Amendment free-exercise claim against Weller is sufficient to proceed to service; and it is further

ORDERED that the Clerk of Court shall terminate all defendants as parties to this action **except** Weller; and it is further

ORDERED that the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, amended complaint, and this order upon Weller without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this order to Holly A. Adams, Ontario County Attorney, 20 Ontario Street, Canandaigua, NY 14424; and it is further

ORDERED that pursuant to 42 U.S.C. § 1997e(g), Weller is directed to respond to the allegations against him in the amended complaint.

SO ORDERED.

Dated:      December 14, 2023
            Rochester, New York


ELIZABETH A. WOLFORD
CHIEF JUDGE
UNITED STATES DISTRICT COURT